IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

L&A DESIGNS, LLC, an Oregon
company, and WESLEY ALFORD, an
individual,

                      Plaintiffs,

       v.

XTREME ATVS, INC., a Connecticut
corporation, ANDREW R. CLUNAN,
an individual, and NATALIE CLUNAN,
an individual,

                      Defendants.

No. 03:10-CV-627-HZ

OPINION & ORDER

Kurt M. Rylander
Mark E. Beatty
Rylander & Associates, PC
406 West 12th Street
Vancouver, WA 98660

      Attorneys for Plaintiff

/ / /
/ / /

1 - OPINION & ORDER

Kenneth R. Davis, II
Parna A. Mehrbani
Jay R. Smith-Hill
Lane Powell P.C.
601 SW Second Avenue, Suite 2100
Portland, OR 97204-3158

HERNANDEZ, District Judge:

Defendant Natalie Clunan moves to dismiss for lack of personal jurisdiction. I deny the

motion.

BACKGROUND

Plaintiffs L&A Designs, LLC and Wesley Alford markets, distributes, and sells all-terrain

vehicle ("ATV") parts. Am. Compl. ¶5. Plaintiff Wesley Alford owns L&A Designs. Id.

Plaintiffs claim trademark infringement, unfair competition, and unfair trade practices regarding

use of their trademark "L&A Designs". Am. Compl. ¶¶50-102. Plaintiffs' claims are based on

allegations that several of Defendants' websites unlawfully use the L&A Designs trademark. Id.

at ¶¶16-29. Defendant Xtreme ATVs, Inc. is based in Connecticut and sells ATV parts. Am.

Answer, ¶6. Xtreme ATVs distributes products created by Monty Lightner, a former co-owner

of Plaintiff L&A Designs. Am. Compl. ¶30. Defendants Andrew and Natalie Clunan are the

sole owners of Xtreme ATVs. N. Clunan Dep.[1] at 2. Ms. Clunan is vice-president and secretary

of the company. Defs.' Memo in Supp. of Mot. to Dismiss ("Clunan MTD"), 2. Ms. Clunan

also designed and maintained the allegedly infringing websites[2] for Xtreme ATVs. Id. In

particular, she designed the websites to include meta tags[3] of Plaintiffs' trademark, L&A

---

[1] Excerpts of Natalie Clunan's deposition are attached as Exhibit 2 to the Declaration of Kurt
Rylander.
[2] The websites are www.ladesigns.com, www.onewayraptor.com, and
www.raptorstarterclutch.com.
[3] A meta tag can cause a search engine, i.e., Google.com or Yahoo.com, to rank a web page
higher if the search term is used as a meta tag on the web page. Am. Compl. ¶17; Am. Answer,
¶17.

Designs.  N. Clunan Dep. at 4, 12.  Defendants advertised and sold products via these websites.
Pls.' Resp. to Mot. to Dismiss ("Pls.' Resp. to Clunan MTD"), 8.  Plaintiffs' complaint does not
otherwise contain allegations specific to Ms. Clunan.

STANDARDS

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal on
the grounds that the court lacks personal jurisdiction.  Plaintiff has the burden of showing
personal jurisdiction.  Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008).

> If the district court decides the motion without an evidentiary hearing, which is
> the case here, then the plaintiff need only make a prima facie showing of the
> jurisdictional facts. . . . Absent an evidentiary hearing this court only inquires into
> whether the plaintiff's pleadings and affidavits make a prima facie showing of
> personal jurisdiction. . . . Uncontroverted allegations in the plaintiff's complaint
> must be taken as true. . . . Conflicts between the parties over statements contained
> in affidavits must be resolved in the plaintiff's favor.

Id.

As a general rule, personal jurisdiction is proper if it is permitted by a long-arm statute
and if the exercise of that jurisdiction does not violate federal due process.  Pebble Beach Co. v.
Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  Because Oregon's long-arm statute confers
jurisdiction to the extent permitted by due process, Gray & Co. v. Firstenberg Machinery Co.,
913 F.2d 758, 760 (9th Cir. 1990) (citing ORCP 4L; Oregon ex rel. Hydraulic Servocontrols
Corp. v. Dale, 294 Or. 381, 657 P.2d 211 (1982)), I may proceed directly to the federal due
process analysis.  See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d
1122, 1129 (9th Cir. 2003) (when state long arm statute reaches as far as the Due Process Clause,
court need only analyze whether the exercise of jurisdiction complies with due process); see also
Millennium Enters., Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 909 (D. Or. 1999).

/ / /

/ / /

3 - OPINION & ORDER

DISCUSSION

The forum state may exercise either general or specific jurisdiction over a nonresident defendant.  Boschetto, 539 F.3d at 1016.  Ordinarily, the court first engages in the general jurisdiction analysis.  If the contacts are insufficient for a court to invoke general jurisdiction, the court then applies the relevant test to determine whether specific jurisdiction exists.  In re Tuli, 172 F.3d 707, 713 n.5 (9th Cir. 1999).

Ms. Clunan also raises the fiduciary shield doctrine to oppose personal jurisdiction.  Clunan MTD, 4.  Under the fiduciary shield doctrine, "a person's mere association with a corporation that causes injury in the forum state" is not sufficient to establish personal jurisdiction.  Davis v. Metro Prod., Inc., 885 F.2d 515, 520 (9th Cir. 1989) (internal citations omitted).  Yet, their employee status does not insulate them from jurisdiction either.  "Each defendant's contacts with the forum State must be assessed individually."  Calder v. Jones, 465 U.S. 783, 789-90 (1984).  Accordingly, an employee, officer, or director may be subject to personal jurisdiction where the individual is a "primary participant" in the alleged wrongdoing.  Id.; accord Davis, 885 F.2d at 522-24.  Primary participants are those individuals who had "control of, and direct participation in the alleged activities."  Wolf Designs, Inc. v. DHR Co., 322 F.Supp.2d 1065, 1072 (C.D. Cal. 2004) (citing Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985)).  In sum, assertion of personal jurisdiction over an employee, officer, or director of a corporation is allowed if the court finds that the individual had sufficient minimum contacts.  See Davis, 885 F.2d at 522.

A.      General Jurisdiction

General jurisdiction is found where the defendant's contacts with the forum are so substantial or continuous and systematic that the defendant can expect to be haled into court

there, even if the action is unrelated to its contacts.  <u>Bancroft & Masters, Inc. v. Augusta</u>

<u>National, Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing <u>Helicopteros Nacionales de</u>

<u>Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415 (1984).  To determine whether a nonresident

defendant's contacts are sufficiently substantial or continuous and systematic, a court considers

the "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into

the state's regulatory or economic markets." <u>Tuazon v. R.J. Reynolds Tobacco Co.</u>, 433 F.3d

1163, 1172 (9th Cir. 2006).   In <u>Perkins v. Benguet Consolidated Mining Co.</u>, 342 U.S. 437, 447-

49 (1952), the Supreme Court upheld a finding of general jurisdiction where the president of a

Philippines-based corporation maintained an office in the forum state, had bank accounts in the

forum state, and held several directors' meetings in the forum state.  The standard for general

jurisdiction is high, requiring that the contacts in the forum "approximate physical presence."

<u>Tuazon</u>, 433 F.3d at1169.

Plaintiffs cite the following evidence in support of general jurisdiction over Ms. Clunan:

she is a web designer and user of the internet, she designed and maintained the allegedly

infringing websites which used the L&A Design mark, and she made numerous sales via eBay to

Oregon residents.  Pls.' Resp. to Clunan MTD, 16.  These contacts are insufficient to meet the

exacting standard for general personal jurisdiction.  Ms. Clunan's contacts with Oregon are, by a

wide margin, too attenuated to approximate "physical presence" in Oregon.  <u>Schwarzenegger</u>,

374 F.3d at 801.  Ms. Clunan does not have an office or staff in Oregon, is not registered to do

business in the state, does not have a registered agent for service of process, and does not pay

state taxes.  I therefore conclude that this Court lacks general personal jurisdiction over Ms.

Clunan.

/ / /

B.    Specific Jurisdiction

The Ninth Circuit uses a three-part test to determine if a party has sufficient minimum contacts to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Brayton Purcell LLP v. Recordon & Recordon, 575 F.3d 981, 985 (9th Cir. 2009) (internal quotation omitted).

Plaintiff bears the burden on the first two parts of the test.  Boschetto, 539 F.3d at 1016. "If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable."  Id.  If plaintiff fails at the first step, "the jurisdictional inquiry ends and the case must be dismissed."  Id.

1.    Purposeful Direction[4]

In Calder v. Jones, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum satisfies the first prong of the specific jurisdiction analysis.  465 U.S. 783 (1984).  To satisfy this test the defendant must have (1) committed an intentional act (2) expressly aimed at the forum state, and (3) caused harm which the defendant knows is likely to

---

[4] A purposeful availment analysis is most often used in suits sounding in contract. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  A purposeful direction analysis is most often used in suits involving intentional torts.  Id.  The parties agree that the purposeful direction analysis is relevant here.  Clunan MTD, 6 n4; Pls.' Resp. to Clunan MTD, 19.

be suffered in the forum state.  Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1206

(9th Cir. 2006).

Here, Plaintiffs argue that Ms. Clunan has purposefully directed her activities to Oregon

because she designed the allegedly infringing websites, inserted meta tags of Plaintiffs' L&A

Designs trademark in the websites, and knew that L&A Designs was the name of a competitor.

Pls.' Resp. to Clunan MTD, 19.  It is clear that Ms. Clunan committed an intentional act by

designing and maintaining the websites that incorporated Plaintiffs' trademark.  The more

difficult question is whether Ms. Clunan's actions were aimed at Oregon and caused harm that

she knew would likely be suffered by Plaintiffs in Oregon.

It has been nearly 15 years since the Ninth Circuit first examined personal jurisdiction in

the context of the Internet.  Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 417 (9th Cir. 1997).

In Cybersell, the court "discussed a sliding scale analysis that looks to how interactive an

Internet website is for purposes of determining its jurisdictional effect."  Boschetto, 539 F.3d at

1018.  The Cybersell court gave examples of "interactivity" on a website that would support

personal jurisdiction, such as entering into contracts, making sales, receiving telephone calls,

earning income, sending messages over the Internet.  Id. at 419.  Years later, the law still requires

more than the maintenance of a passive website for personal jurisdiction.  Mavrix Photo, Inc. v.

Brand Techs., Inc., 647 F.3d 1218, 1229 (9th Cir. 2011).  Operating a website, however, in

conjunction with "something more", i.e., actions that target the forum state, is sufficient to

satisfy the express aiming prong.  Id. (quoting Rio Props. v. Rio Int'l Interlink, 284 F.3d 1007,

1020 (9th Cir. 2002)).  Evidence of "something more" may include the interactivity of the

website, the geographic scope of the defendant's commercial ambitions, and whether the

defendant individually targeted a plaintiff known to be in the forum state.  Id.  (citations

omitted).  The "something more" is meant to show that the defendant directed his activity toward the forum state.  Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998) (jurisdiction found when registering another's trademark as domain names for the purpose of financial gain).

The websites that Ms. Clunan designed and maintained were not passive, as customers could email Defendants and purchase products through these websites.  Am. Compl. ¶¶45-46; A. Clunan Dep.[5], 4.  Ms. Clunan was also aware of L&A Designs as a competitor to her company Xtreme ATVs.  N. Clunan Dep., 69.  One of the websites used Plaintiffs' trademark "L&A Designs" in the website address (www.ladesigns.com) and the other websites used the trademark as meta tags.  Additionally, Xtreme ATVs distributes products made by a former owner of L&A Designs, which demonstrates that Ms. Clunan was familiar with L&A, its products, and its origins.  In fact, an advertising slogan that featured on one of the websites states "From the designers of the L&A Designs starter clutch, this is the same dependable product built to endure Xtreme riding conditions."  Am. Compl. ¶16.  Based on the above, it is apparent that Ms. Clunan intended to use L&A Designs' trademark to take away customers from L&A Designs for financial gain.  By doing so, she has directed her activities against L&A Designs, an Oregon company.  The combination of Ms. Clunan's activities goes beyond simply posting another's trademark on a website.  See Panavision, 141 F.3d at 1322.  I find that the interactivity of the websites and the use of the L&A Designs trademark on the websites is sufficient evidence of the "something more" that shows Ms. Clunan's actions were expressly aimed at Oregon.

Finally, the last prong of the purposeful direction test is also met because it is foreseeable that Plaintiffs would be economically harmed by Ms. Clunan's actions.  See Mavrix, 647 F.3d at

---

[5] Excerpts of Andrew Clunan's deposition are attached as Exhibit 2 to the Declaration of Kurt Rylander.

1231 (economic loss from intentional infringement of copyright is foreseeable). Use of Plaintiffs' trademark on the websites likely diverted sales from Plaintiffs.

>2.      Forum-Related Activities

The second prong of the specific jurisdiction analysis asks whether the claims made against defendants arise out of their forum-related activities. Harris Rutsky, 328 F.3d at 1131. The Ninth Circuit uses a "but for" test to make that determination. Id. at 1131-32. The relevant question is whether but for defendant's contacts with Oregon, would the claims against defendants have arisen? Panavision, 141 F.3d at1322. Here, Plaintiffs' claims against Ms. Clunan would not exist but for her actions related to the websites.

>3.      Reasonableness

If the plaintiff makes a prima facie showing on the first two elements of the specific jurisdiction analysis, the burden shifts to the defendant to establish a "compelling case" that the exercise of jurisdiction would not be reasonable. Boschetto, 539 F.3d at 1016. The following factors are used to determine if the exercise of jurisdiction is reasonable:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Harris Rutsky, 328 F.3d at 1132.

Of the seven factors, Ms. Clunan argues that the first and seventh factors—purposeful interjection into Oregon and the existence of the District of Connecticut as an alternative forum—weigh against exercising jurisdiction. Clunan MTD, 12. Ms. Clunan concedes that the

other factors are either neutral or weigh in favor of exercising jurisdiction.[6]  Id. at 11-12.

Plaintiffs dispute that the first and seventh factors weigh against exercising jurisdiction, and

disagree that the second, third, and sixth factors are neutral.  Pls.' Resp. to Clunan MTD, 22-24.

I have already found that Ms. Clunan's actions were purposefully directed to Oregon via

the targeted use of Plaintiffs' trademark on websites she created.  Because Ms. Clunan admits

that she will likely be a witness at trial and has already participated in discovery, I agree with

Plaintiffs that the burden of having to defend in Oregon weighs slightly in favor of exercising

jurisdiction.  I agree with Ms. Clunan that the third factor is neutral as most of the claims are

based on federal law.  For the fourth and fifth factors, Ms. Clunan has conceded that they weigh

in favor of jurisdiction.  Next, I agree with Ms. Clunan that the sixth factor, convenient and

effective relief for plaintiff, is neutral.  Although the District of Connecticut could provide equal

relief to Plaintiffs, the case is already set for trial in this district, where Plaintiffs reside.  It is

likely that the matter will be more quickly resolved in this district.  For the last factor, I agree

with Ms. Clunan that an alternative forum exists in the District of Connecticut for Plaintiffs to

obtain relief.  In sum, with the exception of the seventh factor, all the other factors weigh in

favor of exercising jurisdiction or are neutral.  I find that it would be reasonable to exercise

jurisdiction over Ms. Clunan.

Finally, I return to the fiduciary shield doctrine, which Ms. Clunan has raised to oppose

the exercise of personal jurisdiction.  The doctrine does not apply in this instance because Ms.

Clunan was a primary participant in the alleged infringement.  She had control over the design

and use of Plaintiffs' trademark on the websites.  Her actions cannot be attributed to Xtreme

---

[6] Ms. Clunan argues that the second, third, and sixth factors are neutral; and that the fourth and
fifth factors weigh in favor of exercising jurisdiction.

ATVs because she was not a mere employee following orders.  The fiduciary shield doctrine cannot be used to insulate Ms. Clunan from this Court's jurisdiction.

CONCLUSION

Based on the foregoing, Defendant Natalie Clunan's motion to dismiss for lack of personal jurisdiction is denied.

IT IS SO ORDERED.


Dated this __20th_____ day of March, 2012.


/s/ Marco A. Hernandez_____
MARCO A. HERNANDEZ
United States District Judge