IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


L&A DESIGNS and WESLEY ALFORD,

               Plaintiffs,

    v.

XTREME ATVS, INC., ANDREW R. CLUNAN,
and NATALIE CLUNAN,

               Defendants.

No. 03:10-CV-627-HZ

OPINION & ORDER

Kurt M. Rylander
Mark E. Beatty
Rylander & Associates PC
P.O. Box 250
Vancouver, WA 98666

       Attorneys for Plaintiffs

Kenneth R. Davis II
Parna A. Mehrbani
Jay Smith-Hill
Lane Powell PC
601 SW Second Avenue, Suite 2100
Portland, OR 97204

       Attorneys for Defendants

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiffs L&A Designs and Wesley Alford bring this trademark infringement and unfair competition action against Defendants Xtreme ATVs, Andrew Clunan, and Natalie Clunan. Defendants have moved for judgment on the pleadings on one claim and partial summary judgment for liability on one issue. Plaintiffs move for summary judgment on all their claims. I grant Defendants' motion for judgment on the pleadings and deny their motion for partial summary judgment. I grant in part and deny in part Plaintiffs' motion for summary judgment.

BACKGROUND

Plaintiff L&A Designs LLC manufactures, markets, distributes, and sells after-market all-terrain vehicle ("ATV") parts, particularly starter clutches. Am. Compl. ¶ 5. L&A Designs was started by Plaintiff Wesley Alford and his business partner Monty Lightner. Decl. of Jay Smith-Hill in Supp. of Defs.' Mot. Summ. J. ("Smith-Hill Decl.") Ex. 1 at 9-10. The partnership faltered and Plaintiff Alford purchased Lightner's 50% share of L&A Designs. Id. at 36. Lightner was not prohibited from using the design of the starter clutch developed while he was with L&A Designs. Id. at 40. Lightner started his own company, L&L eXtreme, to sell competing starter clutches. Id. at 12, 28.

Defendant Xtreme ATVs, Inc., sells after-market ATV parts via a store in Connecticut and several websites. Smith-Hill Decl. Ex. 3 at 14-15. Defendants Andrew Clunan and Natalie Clunan are married and operate Xtreme ATVs as the sole shareholders and managers. Am. Answer ¶ 8; Decl. of Mark Beatty Supp. Pls.' Mot. Summ. J. ("Beatty Decl.") Ex. 2 at 2. In 2004, Defendant Xtreme began selling clutches made by Lightner. Beatty Decl. Ex. 2 at 6.

At the heart of this trademark dispute is the "L&A Designs" mark. The mark was in use beginning in 2003 and federally registered in 2009. Beatty Decl. Ex. 6. The "L&A Designs"

mark does not claim any special font, style, size, or color.  Id.  Defendants created three websites that Plaintiffs allege infringe on their mark:  raptorstarterclutch.com, onewayraptor.com, and ladesigns.com.  Am. Answer ¶¶ 16, 22, 32; Beatty Decl. Ex. 1 at 13. Both of the Raptor websites (raptorstarterclutch.com and onewayraptor.com) feature the following phrase:  "From the designers of the L&A Designs starter clutch, this is the same dependable product built to endure Xtreme riding conditions."  Beatty Decl. Exs. 12, 14.  The L&A Designs mark was also used multiple times as metatags[1] on the raptorstarterclutch.com website.  Beatty Decl. Ex. 1 at 7-8.

The last website, ladesigns.com, was set up to receive traffic from an unhosted web address, ladesignsllc.org.  Beatty Decl. Ex. 2 at 9.  In other words, ladesignsllc.org did not have a website associated with it.  If someone typed the web address or clicked on a link with the address, the user was directed to ladesigns.com.  Id.  The mark obviously appears in the web address, but was not used in the text of the website pages.  The mark was also used as metatags on the website and product photographs were marked  "www.LADesigns.com Copyright 2006." Beatty Decl. Ex. 2 at 8 and Ex. 10 at 2.  Defendant Xtreme has admitted that ladesigns.com violates the Lanham Act for trademark infringement (§ 1114) and unfair competition (§ 1125(a)). Am. Answer ¶¶ 32, 54, 68.

Additionally, Defendants used the mark to sell L&L eXtreme clutches on eBay.  Beatty Decl. Ex. 22 and Ex. 2 at 14.  The products were labeled as "L&A Designs" starter clutches.  Id.

## STANDARDS

A motion for judgment on the pleadings may be brought after the pleadings are closed but within such time as not to delay the trial.  Fed. R. Civ. P. 12(c).  Rule 12(c) is "functionally

---

[1] "Metatags are hidden code used by some search engines to determine the content of websites in order to direct searchers to relevant sites."  Playboy Enterprises, Inc. v. Welles, 279 F.3d 796, 800 n2 (9th Cir. 2002).

identical" to Rule 12(b)(6) and "the same standard of review" applies to motions brought under either rule.  Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1055 n4 (9th Cir. 2011).  If matters outside the pleadings are presented to and not excluded by the court, the motion is to be treated as one for summary judgment.  Fed. R. Civ. P. 12(d).

Judgment on the pleadings is proper when there are no issues of material fact and the moving party is entitled to judgment as a matter of law.  Bagley v. CMC Real Estate Corp., 923 F.2d 758, 760 (9th Cir. 1991).  All allegations of fact by the non-moving party are accepted as true and are construed in the light most favorable to that party.  Id.  To survive a Rule 12(c) motion, "the complaint's factual allegations, together with all reasonable inferences, [must] state a plausible claim for relief."  Cafasso, 637 F.3d at 1053 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct."  Iqbal, 556 U.S. at 679.

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial."  Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28

(9th Cir. 2009) (internal quotation omitted).  The nonmoving party must go beyond the pleadings

and designate facts showing an issue for trial.  <u>Celotex</u>, 477 U.S. at 322-23.

      The substantive law governing a claim determines whether a fact is material.  <u>Suever v.</u>

<u>Connell</u>, 579 F.3d 1047, 1056 (9th Cir. 2009).  The court views inferences drawn from the facts

in the light most favorable to the nonmoving party and draws all reasonable inferences in that

party's favor.  <u>Long v. City & County of Honolulu</u>, 511 F.3d 901, 905 (9th Cir. 2007).

      If the factual context makes the nonmoving party's claim as to the existence of a material

issue of fact implausible, that party must come forward with more persuasive evidence to support

his claim than would otherwise be necessary.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 587 (1986).

## DISCUSSION

      Defendants move for judgment on the pleadings on Plaintiffs' fifth claim—violation of

the Oregon Unfair Trade Practice Act ("UTPA").  Defendants also move for summary judgment

on all claims with respect to liability for using the mark in the "From the designers" phrase[2] on

the Raptor websites.  Plaintiffs move for summary judgment with respect to all their claims.

Although both parties have moved on all the claims, neither party discusses the merits of

Plaintiffs' third claim—violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), more

commonly known as false advertising.[3]  Therefore, excepting the ladesigns.com website, I deny

summary judgment for both parties on Plaintiffs' false advertising claim.

---

[2] The entire phrase at issue is "From the designers of the L&A Designs starter clutch, this is the
same dependable product built to endure Xtreme riding conditions."

[3] Although a false advertising claim also depends on a likelihood of confusion, the analysis for
trademark infringement and false advertising are different.  The elements of a false advertising
claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its
own or another's product; (2) the statement actually deceived or has the tendency to deceive a
substantial segment of its audience; (3) the deception is material, in that it is likely to influence
the purchasing decision; (4) the defendant caused its false statement to enter interstate

I.      **Defendants' Motion for Judgment on the Pleadings**

Defendants argue that Plaintiffs lack standing to sue under the UTPA because they are

not consumers of Defendants' products.  The UTPA states that

> [A]ny person who suffers any ascertainable loss of money or property, real or personal,
> as a result of willful use or employment by another person of a method, act or practice
> declared unlawful by ORS 646.608, may bring an individual action in an appropriate
> court.

ORS § 646.638(1).  Plaintiff alleges the following unlawful practices:

> A person engages in an unlawful practice when in the course of the person's business,
> vocation or occupation the person does any of the following:
> ***
> (b) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship,
> approval, or certification of real estate, goods or services.
> (c) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or
> association with, or certification by, another.
> (e) Represents that real estate, goods or services have sponsorship, approval,
> characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or
> that a person has a sponsorship, approval, status, qualification, affiliation, or connection
> that the person does not have.
> (h) Disparages the real estate, goods, services, property or business of a customer or
> another by false or misleading representations of fact.

Compl. ¶ 90; ORS § 646.608(1).  "Person" is defined as "natural persons, corporations, trusts,

partnerships, incorporated or unincorporated associations and any other legal entity except

bodies or officers acting under statutory authority of this state or the United States."  ORS §

646.605.

The UTPA is limited to consumer actions.  <u>Investigators, Inc. v. Harvey</u>, 53 Ore. App.

586, 590 (Or. Ct. App. 1981) ("The [UTPA] applies only to consumer transactions; it does not

regulate commercial transactions.") (citing <u>Denson v. Ron Tonkin Gran Turismo, Inc.</u>, 279 Or

85, 90, n4 (1977) ("In section 3, . . ., the language 'unfair methods of competition' had been

---

commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false
statement, either by direct diversion of sales from itself to defendant or by a lessening of the
goodwill associated with its products.  <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134,
1139 (9th Cir. 1997).

deleted, since the bill seeks to protect consumers rather than businesses."); Graham v. Kold Kist Beverage Ice, Inc., 43 Or App 1037, 1040 (1979)); see also Lund v. Arbonne Int'l Inc., 132 Ore. App. 87, 93 n7 (Or. Ct. App. 1994) (describing an amendment to the UTPA as needed to ensure "franchises … and other similar business opportunities" had standing under the UTPA).

    In this District, several courts have also ruled that the UTPA is limited to consumer actions. Oregon Laborers–Emp'r Health & Welfare Trust Fund v. Philip Morris, Inc., 17 F. Supp. 2d 1170, 1180 (D. Or. 1998) ("Plaintiffs have not alleged that they are consumers of defendants' products and thus, I find that they lack standing to maintain claims under the Oregon UTPA."), aff'd 185 F.3d 957 (9th Cir. 1999); CollegeNet, Inc. v. Embark.Com, Inc., 230 F. Supp. 2d 1167, 1175 (D. Or. 2001); Volm v. Legacy Health Sys., 237 F. Supp. 2d 1166, 1175 (D. Or. 2002) (summary judgment granted because plaintiff was not a consumer of defendant's products); Allegro Corp. v. Only New Age Music, Inc., No. 01-790-HU, 2002 U.S. Dist. LEXIS 27449, 2003 WL 23571745 (D. Or. 2003); Lanphere Enters. v. Jiffy Lube Int'l, No. 01-1168-BR, 2003 U.S. Dist. LEXIS 16205 (D. Or. July 9, 2003).

    In CollegeNet, plaintiff and defendant competed for business from colleges and universities to supply them with online services. CollegeNet, 230 F. Supp. 2d at 1175. Defendant moved to dismiss the UTPA claim because plaintiff was "not a consumer of [defendant's] products or services." CollegeNet, Inc., 230 F. Supp. 2d at 1172. Magistrate Judge Stewart found that the UTPA was silent on the issue of whether the UTPA is limited to consumer actions. Although person was defined in the statute, the statute was ambiguous because person could reasonably be interpreted to "include only those persons who have purchased or contracted for goods or services." Id. at 1173 (citing Koitzsch v. Liberty Northwest Ins. Corp., 125 Or. App. 666, 669 (1994)). Finding an ambiguity, the court then looked to legislative intent. Id.

7 - OPINION & ORDER

Plaintiffs cite to two cases in support of their argument that the UTPA permits competitor suits. Starbucks Corp. v. Lundberg, No. 02-948-HA, 2004 U.S. Dist. LEXIS 16141, 2004 WL 1784753 (D. Or. Aug. 10, 2004); Shakey's, Inc. v. Covalt, 704 F.2d 426, 430 (9th Cir. 1983). Neither case is persuasive because the standing issue was never raised. Plaintiffs raise several other arguments in their attempts to maintain their UTPA claim: (1) the UTPA is not ambiguous, (2) if the UTPA is ambiguous, legislative history shows that the UTPA is not limited to consumer actions, (3) interpreting the UTPA as limited to consumers would render the statute internally inconsistent, (4) allowing competitors to sue under the UTPA is consistent with the purpose of the UTPA as a consumer protection statute, and (5) the cases that Magistrate Judge Stewart relies upon in CollegeNet do not involve competitors. L&A MSJ, 15-23.

I am not persuaded by Plaintiffs' arguments and see no reason to depart from the well-reasoned opinions of my colleagues. In particular, Magistrate Judge Stewart delved carefully into the legislative history of the UTPA and concluded that the UTPA is limited to consumer actions. CollegeNet, 230 F. Supp. 2d. at 1174. Defendant's motion for judgment on the pleadings regarding Plaintiff's UTPA claim is granted and this claim is dismissed.

## II.     Defendants' Motion for Partial Summary Judgment

Defendants move for partial summary judgment on all of Plaintiffs' claims regarding the "From the designers" phrase that appeared on the Raptor websites. The claims implicated by Defendants' motion are Plaintiffs' claims for federal trademark infringement, common law trademark infringement, and common law unfair competition. Defendants assert that their use of the mark was nominative fair use, and thus there is no liability.

To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must prove that the alleged infringer used the plaintiff's validly registered trademark or trade dress "in

commerce," and that the use is "likely to cause confusion, or to cause mistake, or to deceive consumers" as to the source of the product.  Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1134 (9th Cir. 2006).  There is no dispute that Plaintiffs owns a protectable mark. Brookfield Communs. v. W. Coast Entm't Corp., 174 F.3d 1036, 1047 (9th Cir. 1999) (a mark registered with the USPTO is prima facie evidence of a valid, protectable mark).  Claims for common law trademark infringement are analyzed using the same framework under the Lanham Act.  Classic Instruments v. Vdo-Argo Instruments, 73 Ore. App. 732, 736 (Or. Ct. App. 1985).

Similarly, "unfair competition is limited to misappropriation of a competitor's intellectual property, such as trade name or trade dress, and it requires a showing of a likelihood of consumer confusion."  Volt Servs. Group v. Adecco Empl. Servs., Inc., 178 Ore. App. 121, 135 (Or. Ct. App. 2001).  Unfair competition claims in Oregon have traditionally involved disputes between similar business names.  Photo & Sound Co. v. Corvallis, 291 Ore. 105, 112 (Or. 1981).  "In unfair competition suits, the issue is one of injury to private rights, i.e., whether a prior user of a business name will likely be injured as a result of public confusion engendered by another's use of an identical or similar name."  Id.  Plaintiffs argue that unfair competition encompasses conduct beyond trademark infringement, but do not provide a legal basis for other types of conduct that would fall under its common law unfair competition claim.  L&A MSJ Reply, 1.  In unfair competition claims, a court "is guided by the same principles that are applied in the protection of individuals in the use of trademarks and trade names."  Umpqua Broccoli Exchange v. Um-Qua Valley Broccoli Growers, 117 Ore. 678, 685 (Or. 1926).  Therefore, the outcome of the trademark infringement, common law trademark infringement, and unfair competition claims all rely on finding a likelihood of confusion.

The parties do not dispute the existence of a valid trademark used in commerce.  Defs.'
Resp. L&A MSJ, 7.  Thus, the only issue remaining is whether Defendants' use of the "From the
designers" phrase caused a likelihood of confusion.  Typically, an eight-factor analysis is used to
determine likelihood of confusion in trademark infringement cases.  Toyota Motor Sales, U.S.A.,
Inc. v. Tabari, 610 F.3d 1171, 1175 (9th Cir. 2010) (citing AMF Inc. v. Sleekcraft Boats, 599
F.2d 341, 348-49 (9th Cir. 1979).  However, the Sleekcraft factors do not apply when "a
defendant uses the mark to refer to the trademarked good itself."  Id.  If this threshold condition
is met, i.e., the mark is used to refer to the trademarked good, the nominative fair use analysis is
used.  Id.  Once a defendant meets this threshold condition, "[t]he burden reverts to the plaintiff
to show likelihood of confusion."  Id. at 1183; see KP Permanent Make–Up, Inc. v. Lasting
Impression I, Inc., 543 U.S. 111, 118 (2004) (party alleging infringement always has the ultimate
burden of proving likelihood of confusion).

A.      Threshold Condition

First, I must determine whether the Defendants have used the L&A Designs mark to refer
to the trademarked good.  The phrase that appeared on the Raptor websites is "From the
designers of the L&A Designs one way starter clutch, this is the same dependable product built
to endure Xtreme riding conditions."  Beatty Decl. Exs. 12, 14.  Defendants assert that the L&A
Designs mark was used to describe the L&A Designs starter clutch.  Def.'s Memo Supp. Mot.
Summ. J. ("Xtreme MSJ"), 8.  Plaintiffs disagree and argue the mark refers to Defendants'
product.  Pls.' Resp. to Xtreme MSJ, 4.

The nominative fair use analysis is appropriate "*even if the defendant's ultimate goal is to
describe his own product.*"  Cairns v. Franklin Mint Co., 292 F.3d 1139, 1151 (9th Cir. 2002)
(emphasis in original).  The following examples meet the threshold condition for nominative fair

use, even though the mark was ultimately used to describe defendant's product:  an automobile

repair business that advertised "Modern Volkswagen Porsche Service", a television station that

made unauthorized broadcasts of the Boston Marathon, and an imitator of brand name perfumes

that advertised its product as being similar to Chanel No. 5.  Id. at 1152.  I agree with Defendants

that the mark is used to describe Plaintiff's trademarked good.  Although "this" in the phrase

refers to Defendants' product, the L&A Designs mark is used to indicate that Defendants'

product is similar to the L&A Designs starter clutch.  I find that the threshold condition of the

nominative fair use test has been met.

B.      Nominative Fair Use

There are three factors to consider under the nominative fair use analysis.  I must

determine "whether (1) the product was 'readily identifiable' without use of the mark; (2)

defendant used more of the mark than necessary; or (3) defendant falsely suggested he was

sponsored or endorsed by the trademark holder."  Toyota, 610 F.3d at 1175-1176 (citing Welles,

279 F.3d at 801).  The nominative fair use test evaluates the risk of whether defendant's use of

the mark will lead consumers to incorrectly believe that the defendant's product is sponsored or

endorsed by the trademark owner.  Id. at 1176.

1.      Readily Identifiable

The first factor analyzes whether Plaintiffs' product is readily identifiable without use of

the mark.   Plaintiffs mistakenly interpret this factor to refer to Defendant's product.  Pls.' Resp.

Xtreme MSJ, 9 ("Defendants' product is easily identifiable without the use of Plaintiffs'

trademark.").  It is Plaintiff's burden to show that there is no nominative fair use.  See Toyota,

610 F.3d at 1182-83 ("A finding of nominative fair use is a finding that the plaintiff has failed to

show a likelihood of confusion as to sponsorship or endorsement.").  Because Plaintiffs

misunderstood this first factor, they obviously have not met their burden.  Even if Plaintiffs had

understood this factor correctly, I do not see how the L&A Designs starter clutch could be

described without using mark.  Defendants correctly argue that they could have avoided using

the L&A Designs mark by stating "From Monty Lightner and Wesley Alford, designers of a

popular clutch also marketed under another brand name".  Xtreme MSJ, 15.  But forcing

Defendants to rely on long, descriptive phrases is not required by the law.  Welles, 279 F.3d at

802.  I find that this first factor favors Defendants.

> 2.      Necessary Use of Mark

The second factor considers whether defendant used more of the mark than necessary.

For example, a soft drink competitor is entitled to refer to the marks Coca-Cola or Coke, but is

not allowed to use the mark's distinctive lettering or color.  New Kids on the Block v. News Am.

Publ'g, Inc., 971 F.2d 302, 308 n7 (9th Cir. 1992).  Plaintiffs' mark appeared on the Raptor

websites in blue, but in regular font and size.  Beatty Decl. Exs. 12, 14.  The L&A Designs mark

is a plain word mark.  It does not have protection for any particular font, style, size, or color.

Defendants used the text of the mark once on each website—which was the least that Defendants

could use given the lack of distinctive characteristics in Plaintiffs' mark.  Defendants could not

have used less of the mark and conveyed the same meaning.  I find that this factor favors

Defendants as well.

> 3.      Sponsorship or Endorsement

The third factor analyzes whether Defendants' use of the mark suggests sponsorship or

endorsement by L&A Designs.  In the context of a website, visual cues, such as imagery and

logos, may lead a consumer to believe that she is visiting an authorized dealer of the trademarked

product.  Toyota, 610 F.3d at 1182.  Here, the Raptor websites include the phrase, "From the

designers of the L&A Designs starter clutch, this is the same dependable product built to endure Xtreme riding conditions." Beatty Decl. Exs. 12, 14. Defendants argue that the phrase only suggests the history of Defendants' product design. Xtreme MSJ, 16. Plaintiffs urge the Court to view the totality of Defendants' conduct among the three websites. Pls.' Resp. Xtreme MSJ, 10-12. There is no legal basis for Plaintiffs' position. Nevertheless, I find that the phrase is ambiguous enough to suggest that the product is produced by Plaintiffs. I find that there is a genuine issue of material fact as to whether this phrase suggests sponsorship or endorsement by Plaintiffs.

Because there is a genuine issue of material fact regarding the third factor of the nominative fair use test, Defendants' motion for partial summary judgment is denied and likewise, Plaintiffs' cross-motion is denied.

**III.    Plaintiffs' Motion for Summary Judgment**

Plaintiffs move for summary judgment for liability on all of their claims, willfulness, and damages. I have already made rulings regarding the "From the designers" phrase on the Raptor websites. Furthermore, Defendant Xtreme has already admitted liability for trademark infringement and unfair competition for the ladesigns.com website. Therefore, in terms of liability issues raised in Plaintiffs' motion, I limit the discussion to (1) Defendants' use of the L&A Designs mark as metatags on the raptorstarterclutch.com website and (2) personal liability of Defendants Andrew and Natalie Clunan.

As previously discussed in Defendants' motion for partial summary judgment, the only issue regarding Plaintiffs' claims for federal trademark infringement, common law trademark infringement, and unfair competition is whether there is a likelihood of confusion. Plaintiffs focus solely on the traditional eight-factor Sleekcraft likelihood of confusion analysis and apply

this analysis to Defendants' use of the mark in all contexts. L&A MSJ, 21. A correct analysis would have parsed out each use of the mark. Defendants discuss the <u>Sleekcraft</u> factors as well, admitting that the factors apply to certain uses. Defs.' Resp. L&A MSJ, 12. But Defendants do not specify which use of the mark should be analyzed with the <u>Sleekcraft</u> factors. <u>Id.</u> Given this morass, I will attempt to tease out the parties' arguments.

    A.    Metatags

Defendants briefly argue nominative fair use of the metatags for the same reasons stated in its motion regarding the "From the designers" phrase. Defs.' Resp. L&A MSJ, 11-12. I do not find this argument convincing, particularly since the use of the mark as a metatag is substantially different from using the mark in a phrase. More importantly, I doubt that the threshold condition—whether the mark was used to refer to the trademarked good—has been met. Plaintiffs merely respond that there is no nominative fair use and conclude that "[t]his is not even a close case." L&A MSJ, 35. I cannot conclude either way if nominative fair use applies.

If nominative fair use is inapplicable, then the <u>Sleekcraft</u> factors are used to determine likelihood of confusion. Courts weigh the following eight factors: (1) strength of plaintiff's mark; (2) proximity of the parties' goods; (3) similarity of trade or marketing channels; (4) similarity of the marks; (5) defendant's intent; (6) evidence of actual confusion; (7) type of goods and degree of care exercised by the average purchaser; and (8) likelihood of expansion of the product lines. <u>Sleekcraft</u>, 599 F.2d at 348-49. The <u>Sleekcraft</u> test is not rigid and "[o]ther variables may come into play depending on the particular facts presented." <u>Id.</u> at 348 n11; <u>see also</u> <u>Network Automation, Inc. v. Advanced Sys. Concepts</u>, 638 F.3d 1137, 1145 (9th Cir. 2011) ("The <u>Sleekcraft</u> factors are intended as an adaptable proxy for consumer confusion, not a rote

checklist.").  The weight of each factor is determined "in accordance with its relevance to the factual circumstances presented".  <u>Network Automation</u>, 638 F.3d at 1149.  Finally, neither intent to confuse nor actual confusion is required for a trademark infringement claim.  <u>Coca-Cola Co. v. Overland, Inc.</u>, 692 F.2d 1250, 1256 n16 (9th Cir. 1982); <u>Brookfield Comm.</u>, 174 F.3d at 1050.  Instead, the central inquiry is whether a "reasonably prudent customer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks" because of the similarities between the two marks.  <u>Dreamwerks Prod. Group, Inc. v. SKG Studio,</u> 142 F.3d 1127, 1129 (9th Cir. 1998).

Defendants used the L&A Designs mark as metatags on the raptorstarterclutch.com and ladesigns.com websites.  Because Defendant Xtreme has already admitted liability for trademark infringement for the ladesigns.com website, I limit my discussion to the metatags on the raptorstarterclutch.com website.  In a likelihood of confusion analysis, there are two possible types of confusion—initial interest confusion or source confusion.  In initial interest confusion, a consumer is initially misdirected to an infringer's website that contains metatags containing the mark at issue, but may not be confused as to the source of the product.  <u>See</u> <u>Network Automation</u>, 638 F.3d at 1146.  On the other hand, source confusion occurs when the infringer's goods competes with those of the trademark owner because of the similarity between the infringing mark and the trademark.  <u>See</u> <u>id.</u> at 1145.  Because the metatags are not visible to the consumer, initial interest confusion is more likely here.

### 1.    Strength of the Mark

"The stronger a mark — meaning the more likely it is to be remembered and associated in the public mind with the mark's owner — the greater the protection it is accorded by the trademark laws." <u>Brookfield</u>, 174 F.3d at 1058.  Strength can be measured conceptually and

commercially.  Network Automation, 638 F.3d at 1149.  Conceptual strength involves

classifying a mark as generic, descriptive, suggestive, arbitrary, or fanciful.  Id.  Along this

spectrum, a fanciful mark is the most distinctive and a generic mark is the least distinctive.  Id.

Conceptually, a mark is stronger if the connection between the mark and the goods is not

obvious.[4]  Id.  Commercial strength may be evidenced by advertising expenditures.  Id.

     Plaintiffs argue that their mark is inherently distinctive.  L&A MSJ, 22.  Defendants

concede that this factor may favor Plaintiffs.  Defs.' Resp. L&A MSJ, 12.  Because there is no

obvious connection between the L&A Designs mark and the starter clutch, this factor favors

Plaintiffs.

              2.       Proximity of Goods

     "Related goods are generally more likely than unrelated goods to confuse the public as to

the producers of the goods."  Brookfield, 174 F.3d at 1055; see also E & J Gallo Winery v. Gallo

Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992) ("Where goods are related or complementary,

the danger of consumer confusion is heightened.").  In determining whether the product is likely

to confuse, "less similarity between the marks will suffice when the goods are complementary,

the products are sold to the same class of purchasers, or the goods are similar in use and

function." Sleekcraft, 599 F.2d at 350 (citations omitted).  Related goods are those "which

would be reasonably thought by the buying public to come from the same source if sold under

the same mark."  Id. at 348 n10 (citation omitted).

     Plaintiffs and Defendants sell competing starter clutches, and Defendants concede that

this factor may favor Plaintiffs.  Defs.' Resp. L&A MSJ, 12.  I find that this factor favors

Plaintiffs.

/ / /

---

[4] For example, "Apple" is more distinctive than "ABC Computers".

16 - OPINION & ORDER

3.      Similarity of Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." Sleekcraft, 599

F.2d at 353.  However, this factor is less important when the marketing channel is less obscure.

Network Automation, 638 F.3d at 1151 ("shared use of a ubiquitous marketing channel does not

shed much light on the likelihood of consumer confusion").  Both parties use the Internet to sell

their products.  I give no weight to this factor.

4.      Similarity of Marks

The similarity of the marks "has always been considered a critical question in the

likelihood-of-confusion analysis."  GoTo.Com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205

(9th Cir. 2000).  "[T]he greater the similarity between the two marks at issue, the greater the

likelihood of confusion."  Id. at 1206.  In the similarity analysis: "(1) Marks should be

considered in their entirety and as they appear in the marketplace; (2) Similarity is best adjudged

by appearance, sound, and meaning; and (3) Similarities weigh more heavily than differences."

Entrepreneur Media, 279 F.3d at 1144.

The mark was used in the metatags of the website, which was not visible to the consumer.

Plaintiffs argue that metatags are used by search engines to index and rank websites.  L&A

Designs MSJ, 23.  However, the most popular search engine, Google, does not even use metatags

to find and rank websites.  Network Automation, 638 F.3d at 1146 n3.  Given the lack of

argument and evidence from the parties, I cannot make a finding for this factor.

5.      Defendant's Intent

As noted previously, a showing of intent to confuse consumers is not required for a

finding of trademark infringement.   Defendant Natalie Clunan's understanding of a metatag is

important, as she is the one who inserted the metatags on the websites.  Beatty Decl. Ex. 1 at 5-7.

17 - OPINION & ORDER

Ms. Clunan believed that search engines could use metatags, among other things, to rank search results. Id. at 6. It is undisputed that the raptorstarterclutch.com website was started in October 2006, before the owners of L&A Designs split up. L&A MSJ Reply, 6. Defendants argue that they sold L&A Designs products from Mr. Lightner on the website, so that use of the metatag was fair. Defs.' Resp. L&A MSJ, 15. I find that there is genuine issue of material fact for this factor.

            6.    Actual Confusion

    Like intent, actual confusion is not necessary for a finding of trademark infringement. Plaintiffs' evidence of actual confusion relies on the testimony of Brian Navarro. Navarro is a dealer of L&A Designs products. He testified that he received several phone calls from people asking about the differences in the competing products. Beatty Decl. Ex. 5 at 6. Navarro also received Defendants' starter clutches in the mail requesting service under the warranty. Id. Defendants object to Navarro's testimony as hearsay and that Navarro has credibility issues due to a prior conviction. Second Smith-Hill Decl. Supp. Defs.' Resp. L&A MSJ ("Second Smith-Hill Decl.") Ex. 4 at 1. Plaintiff Alford also testified that dealers were confused by the ladesigns.com website. Beatty Decl. Ex. 4 at 28. Hearsay and credibility issues aside, the testimony of Navarro and Plaintiff Alford do not address how consumer confusion was caused from the use of metatags. I give this factor no weight.

            7.    Degree of Consumer Care

    "In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." Sleekcraft, 599 F.2d at 353. Where goods are expensive, and likely to be purchased after careful consideration, it is less likely that a reasonably prudent buyer would be confused as to the source of the goods. See id. Additionally,

as online commerce becomes more prevalent, the degree of consumer care has increased.

Network Automation, 638 F.3d at 1152.  Plaintiffs do not discuss the cost of its starter clutch.

There is only evidence that Defendants' sold their products for $169 or $269.  Beatty Decl. Ex.

12, 14.  I cannot make a determination on this factor.

        8.     Likelihood of Expansion of Product Lines

"Inasmuch as a trademark owner is afforded greater protection against competing goods,

a 'strong possibility' that either party may expand his business to compete with the other will

weigh in favor of finding that the present use is infringing.  When goods are closely related, any

expansion is likely to result in direct competition."  Sleekcraft, 599 F.2d at 354 (citations

omitted).  Where two companies are direct competitors, this factor is unimportant.  Cf.

Brookfield, 174 F.3d at 1060.  I give this factor no weight.

There are genuine issues of material fact for a number of the Sleekcraft factors.  I deny

Plaintiffs' motion for summary judgment as to Defendants' use of metatags on the

raptorstarterclutch.com website.

        B.     Liability for Defendants Andrew and Natalie Clunan

Plaintiffs argue that Defendants Andrew and Natalie Clunan are personally liable for

trademark infringement.  L&A MSJ, 28.  An individual who personally directs a corporation in

committing trademark infringement, or who personally commits those acts, is personally liable

for that infringement.  See Committee for Idaho's High Desert v. Yost, 92 F.3d 814, 823 (9th

Cir. 1996) (corporate officers may be liable for Lanham Act false advertising claim); Wilden

Pump & Eng'r Co. v. Pressed & Welded Prods. Co., 655 F.2d 984, 990 (9th Cir. 1981)

(defendant personally liable for patent infringement); see also Mead Johnson & Co. v Baby's

Formula Serv., Inc., 402 F.2d 19, 23 (5th Cir. 1968); Chanel Inc. v. Italian Activewear of Florida

Inc., 931 F.2d 1472, 1477-78 (11th Cir. 1991). Liability attaches to "persons who were significant shareholders in the corporation, executive officers or chief executives, presidents of the corporation, alter egos of the company, or other high ranking individuals with personal control, supervision, and direction of both the company and the [infringement]." Wilden, 655 F.2d at 990.

It is undisputed that Andrew and Natalie Clunan are the sole shareholders and managers of Defendant Xtreme ATVs. Andrew Clunan purchased the domain names for the ladesigns.com and the Raptor websites. Beatty Decl. Ex. 2 at 8-9. Natalie Clunan designed the websites and inserted the metatags into the websites. Id. at Ex. 1 at 11, Ex. 2 at 8, and Ex. 17 at 7. Additionally, Andrew Clunan purchased the website www.ladesignsllc.org and set it to redirect users to the ladesigns.com website. Id. at Ex. 17 at 7. Defendants do not dispute any of this evidence. I find that these facts are sufficient to establish personal liability for the ladesigns.com website because Defendant Xtreme has already admitted liability for that website. Plaintiffs' motion for summary judgment regarding personal liability for Andrew and Natalie Clunan is granted for the ladesigns.com website only, as Defendants have not established liability for any other conduct.

    C.    Willfulness

Plaintiffs are entitled to an award of attorneys' fees if the case is "exceptional." Gracie v. Gracie, 217 F.3d 1060, 1068 (9th Cir. 2000). This determination is decided as a matter of law. Watec Co. v. Liu, 403 F.3d 645, 656 (9th Cir. 2005). A case is exceptional case when the infringement is "malicious, fraudulent, deliberate or willful." Gracie, 217 F.3d at 1068 (citation omitted). For example, infringement is exceptional when a defendant knowingly registered plaintiff's mark as a website address, tried to extort thousands of dollars from the plaintiff, had a

pattern and practice of cybersquatting, and had a pattern of abusive discovery and litigation

conduct.  Lahoti v. Vericheck, Inc., 636 F.3d 501, 510–11 (9th Cir. 2011).  A case was also

exceptional because "defendants deliberately arranged to obtain counterfeit goods and to sell

such goods as genuine [] products."  Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.,

692 F.2d 1272, 1276 (9th Cir. 1982).  In contrast, the court in Horphag Research Ltd. v. Garcia

agreed with the district court that the case was not exceptional when defendant "made deliberate

and calculated attempts to confuse [defendant's] product with [plaintiff's product]".  475 F.3d

1029, 1039 (9th Cir. 2007).

At this juncture, I decline to find this is an exceptional case.  Although Plaintiffs have

demonstrated that some conduct by Defendants was deliberate, it does not rise to the level of

"malicious, fraudulent, deliberate, or willful" as shown in other cases.  Plaintiffs' motion for

summary judgment as to willfulness is denied.

     D.    Damages

Plaintiffs move for summary judgment on the issue of damages.  A plaintiff may recover

"(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the

action."  15 U.S.C. § 1117(a).  Plaintiff is only required to prove defendant's sales and defendant

must prove all elements of cost or deduction claimed."  Id.

Plaintiffs' request for damages is premature.  Liability has only been established for the

ladesigns.com website and I have not made a finding of willfulness.  Furthermore, Defendants

dispute the underlying basis for Plaintiffs' expert on damages.  Decl. of N. Clunan Supp. Defs.'

Resp. L&A MSJ ("N. Clunan Decl.") ¶¶ 3-4; Second Smith-Hill Decl. Ex. 8.  Although Plaintiffs

are entitled to damages for trademark infringement for the ladesigns.com website, I decline to

award a specific amount given that genuine issues of material fact exist. Plaintiffs' motion for summary judgment on damages is denied.

**III.      Motions to Strike and Objections**

Defendants and Plaintiffs both moved to strike evidence and arguments offered by the opposing party. Many of these motions were unnecessary and were a waste of the parties' time and money. To the extent that I rely on objected evidence, I have explained my reasons for overruling the objection. All other objections are moot.

CONCLUSION

Based on the foregoing, (1) Defendants' motion for judgment on the pleadings is granted and claim five is dismissed; (2) Defendants' motion for partial summary judgment is denied; (3) Plaintiffs' motion for summary judgment is granted for claims one, four, and six on the issue of Defendants' liability related to the ladesigns.com website; and (4) Plaintiffs' motion for summary judgment is otherwise denied.

IT IS SO ORDERED.

Dated this  30th       day of April, 2012.

/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

22 - OPINION & ORDER